IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| CAROLINE CASTELLAW<br>632 East Glenridge Lane<br>Clarksville, TN 37043, | )<br>)<br>)<br>) | |
| CHERYL CARNES<br>6979 High Mill Avenue NW<br>Canal Fulton, OH 44614, | )<br>)<br>)<br>)<br>) | |
| KATHRYN ROSE<br>5525 West Market Street Ext.<br>Cheraw, SC 29520, | )<br>)<br>)<br>) | Case No.  14-1048 |
| AMANDA WILSON<br>253 Rockdale Subdivision Loop<br>Americus, GA 31709, | )<br>)<br>)<br>)<br>) | |
| HELEN SPOSATO<br>P.O. Box 957<br>Lincoln, AR 72744, | )<br>)<br>)<br>)<br>) | |
| KACY MCDONOUGH<br>113 Maiden Lane<br>Myrtle Beach, SC 29588, | )<br>)<br>)<br>) | ORIGINAL COMPLAINT |
| SHERRY TAITZ<br>1623 Collins Avenue, #915<br>Miami Beach, FL 33139, | )<br>)<br>)<br>)<br>) | Jury Trial:     Yes |
| MARLA HUBER<br>232 River Park Drive<br>Jupiter, FL 33477, | )<br>)<br>)<br>)<br>) | |
| JOY MARIE CZAPSKI<br>8966 Watchlight Court<br>Columbia, MD 21045, | )<br>)<br>)<br>)<br>) | |
| DANIEL QUICK<br>2121 Marathon Keys Avenue<br>N. Las Vegas, NV 89031, | )<br>)<br>)<br>)<br>) | |
| CHARITY RICHERT<br>46159 Township Road<br>Millersburg, OH 44654, | )<br>)<br>)<br>) | |

1

| | |
|---|---|
| DIANE RUBENS<br>110 N. Michigan Avenue<br>Jonesboro, LA 71251, | )<br>)<br>)<br>) |
| KAREN BLANKEN<br>P.O. Box 19337<br>Cincinnati, OH 45219, | )<br>)<br>)<br>) |
| WANDA PENNINO<br>1336 Azora Drive<br>Deltona, FL 32725, | )<br>)<br>)<br>) |
| JILLIAN PHELAN<br>702 Gainesborough Drive<br>East Lansing, MI 48823, | )<br>)<br>)<br>) |
| DEBORAH MCCARVER<br>315 Jacksonian Drive<br>Hermitage, TN. 37076, | )<br>)<br>)<br>) |
| DEBRA ALEXANDER<br>1261 Woody Atkinson Road<br>Woodburn, KY 42170, | )<br>)<br>)<br>) |
| Plaintiffs, on behalf of themselves and similarly-situated others. | )<br>)<br>)<br>) |
| v. | ) |
| REGENTS COLLEGE<br>D/B/A | )<br>)<br>) |
| EXCELSIOR COLLEGE<br>7 Columbia Circle<br>Albany, New York 12203 | )<br>)<br>)<br>) |
| Serve Upon:<br>John F. Ebersole<br>President<br>EXCELSIOR COLLEGE<br>7 Columbia Circle<br>Albany, New York 12203 | )<br>)<br>)<br>)<br>)<br>)<br>) |
| Defendant.<br>_____ | )<br>) |

2

**CLASS ACTION COMPLAINT**
**AND DEMAND FOR JURY TRIAL**

COME NOW THE PLAINTIFFS, on behalf of themselves and on behalf of similarly-situated others, sue the Defendant and allege the following:

**Nature of The Case**

The Plaintiffs bring this action, *inter alia*, to address misrepresentations and omissions made by Defendant Excelsior in connection with its RN nursing program, which is in essence a subjective weekend-long exam. Excelsior sold the Plaintiffs an "educational" program that was devoid of any education, and they sold them an "objective" test, which was anything but objective. These actions and inactions violate New York General Business Law §349, *et seq.*, and are in direct and material breach of Plaintiffs' contracts with Excelsior.

**Jurisdiction and Venue**

1. Jurisdiction is proper in this Court as the Defendant is a corporation, which is domiciled in the State of New York.

2. Venue in this judicial district is proper in that the Defendant operates a testing center at the New York Medical Center Hospital of Queens, Flushing, New York, where it administers the Clinical Performance in Nursing Examination ("CPNE") in a manner that violates the law as the Plaintiffs allege herein.

**Factual Allegations**

3. The named Plaintiffs in this action are citizens of the United States who reside in eleven different States: Arkansas, Florida, Georgia, Kentucky, Louisiana, Maryland, Michigan, Nevada, Ohio, South Carolina and Tennessee. One of the named

Plaintiffs is presently serving in the United States military and she is presently stationed in Germany.

4. The Defendant Regents College does business in the State of New York as Excelsior College (hereinafter "Excelsior" or "EC" or the "Defendant"). Excelsior is a private entity, headquartered in Albany, New York, which purports to provide distance educational services to consumers nationwide in the area of nursing, among other degrees.

5. Defendant claims that with its "student-friendly" nursing degree programs, "you can [w]ork with nationally recognized faculty" and "[b]enefit from personalized advising." The Defendant declares that it can improve the consumer's "job security, and your earning power."

6. The Defendant claims to provide an associate's degree in nursing ("RN degree") to working individuals. Typically, the Defendant makes it attractive for Plaintiffs and other consumers to enroll in Excelsior by informing them that EC would accept transfer credits. The consumers would then enroll, paying a registration fee, and later learning that they obligated themselves to pay an annual registration fee of approximately $500.00. The Defendant has an interest in expanding the years in which a student is enrolled and allows a student to obtain a nursing degree in as long as 7 years.

7. The Defendant does not disclose to consumers and potential students its associate nursing program graduation rates, and it failed to disclose to Plaintiff any such rates.

4

8. After accepting the transfer credits, Defendant typically sells Plaintiffs and other consumers a number of program courses ("mini courses").

9. The Defendant provides the Plaintiffs and other consumers with misleading cost estimates. EC fails to include in the cost estimate it provides to consumers the cost of subsequent failures of the subjective CPNE. The registration for taking each CPNE exam is approximately $2,000.

10. EC falsely claimed that its programs in nursing are designed "to provide opportunities to *acquire the knowledge and skills* necessary to reach [a consumer]'s personal and nursing career goals." The Plaintiffs were led to believe that the Defendant operates a bona fide nursing program with opportunities to expand their learning and receive an RN degree. Excelsior did not provide consumers with the clinical education that it promises. Instead, it provides a test.

11. Central to Defendant's pattern of unfair and deceptive trade practices is a test the Defendant calls: Clinical Performance in Nursing Examination ("CPNE"). For the relevant time period, the Defendant engaged in a pattern and practice of withholding certain material information regarding the CPNE until the Plaintiffs and other consumers had expended resources and were irreversibly committed to completing the program.

12. The Defendant falsely represented that the CPNE provides "[*a] carefully controlled and monitored examination experience that insures a fair and objective assessment of your knowledge and skill.*"

13. The Defendant failed to disclose the following as to the CPNE:

5

a) Any information regarding the test until all of the mini-courses were completed and it was time to take the CPNE. At that time, Plaintiffs received information about the test.
b) The extent of EC's involvement in designing, administering and manipulating the test, and EC's pecuniary interest and stakes in the result of the test;
c) That the test, as administered, does not "insure a fair and objective assessment" of the consumer's knowledge and skill;
d) That the test is subjective and is susceptible to arbitrary application;
e) An actual pass and/or fail rate of the exam, which is not misleading to consumers;
f) The details of the subjective test-appeal policy;
g) That at least one state educational authority has deemed the CPNE-based program as inadequate for licensure, finding that students simply take a weekend test.
h) That at least one educational authority's rejection of the EC nursing program was due to a finding of a lack of supervised clinical instruction;
i) That due to the subjective nature of the CPNE, students find themselves required to take workshops, which provide the supervised, clinical instruction, which the EC program lacks; and
j) That due to the nature of the exam, some students would inherently face different scenarios than other students, and that the examiners and the test criteria vary from site to site.

14. The Defendant falsely suggested that prior knowledge of nursing and/or nursing-related fields assists in the success of the RN program.

15. EC failed to inform students that EC credits, for courses taken with EC, are not transferrable to other educational institutions with programs that lead to an RN degree.

16. The Defendant completely controls the design, the administration and the outcome of the CPNE without the policing, or assurance of neutrality, by a detached third party of the exam-taking process.

17. The Defendant maintained a subjective and arbitrary appellate process. The fact that there is an appellate procedure, whereby some results may be overturned, further undermines the representation that the test is objective. When

an appeal is arbitrarily and subjectively granted, the Defendant demands that consumers acknowledge that by accepting the offer to reverse the failure, the consumer is "accepting the decision of the faculty that [her/his] examination … is nullified and did not count as one of the opportunities to satisfy[ing] this degree requirement…" The purpose of this requirement appears to be the prolonging of the program and the extraction by Excelsior of additional annual registration fees (and funds for preparation workshops/courses). Indeed, the EC process of retaking the examination itself can be protracted. In what appears to be a form retaking notification, EC stated that "the scheduling process [for retaking the CPNE] continues to take four to six months" from the date that an application is submitted.

18. Plaintiff Caroline Castellaw is a resident of the State of Tennessee. She possesses a Master's degree in Health Care Administration. She applied for enrollment with the Defendant in October of 2010, and she incorporates by reference the allegations made above concerning Excelsior's representations and omissions as to the nursing education and the CPNE test. She adds that Defendant further represented that her knowledge and experience would count towards the degree, and this statement also turned out to be untrue. The representations of the Defendant were made at or near the time of Plaintiff's enrollment. The Defendant wrongfully failed this Plaintiff in November of 2011, in May of 2012, and in June of 2013.

19. Plaintiff Cheryl Carnes had been a nurse for 24 years before she decided to enroll with the Defendant in June of 2010. Like all of the other Plaintiffs, EC kept the CPNE testing process "a secret" until Ms. Carnes finished her mini courses in August of 2012. It was only at that time that the Defendant disclosed some

information regarding the CPNE, such as the pass rate. Ms. Carnes wrote to the Defendant that she was "shocked" to learn of the "odds" against her. She stated in an e-mail to Excelsior that had she been aware of this information, she may have taken "another route." Defendant EC failed this Plaintiff twice; once at a New York site (in June of 2013) and the second at a Pennsylvania site (in November 2013). Defendant's Examiner falsely assessed Plaintiff as having failed due to an observation as to the vital signs, which observation the Examiner did not actually make. After utilizing Defendant's subjective appeals' process, Plaintiff was not permitted to pass, but was informed that she can retest.

20. Like Plaintiff Carnes, Plaintiff Kathryn Rose, who is a resident of South Carolina, is a nurse who has 33 years of experience in nursing. She enrolled with the Defendant in September of 2007. EC refused to discuss the CPNE until just before the examination is to be taken. The Defendant failed the Plaintiff in March, June and September of 2013. The Defendant falsely claimed that the Plaintiff failed in the care plan area, where Plaintiff had a significant amount of experience and in all of her experience as a nurse she was never once cited in any of the inspections taking place throughout the years.

21. Plaintiff Amanda Wilson is a resident of the State of Georgia, and she is presently serving in Germany with the United States military. Excelsior heavily markets itself to the military. Yet, Defendant withholds the accurate pass rates, particularly for military personnel. The Plaintiff was an Army medic, an Army LPN, and wished to become an RN. She had prior experience as a Patient Care Technician and as a Certified Nurse Assistant. She enrolled with Excelsior in 2008. As is the

8

case with the named Plaintiffs and other consumers, the Defendant failed to provide the requisite educational instruction and the equipment for Plaintiffs to pass the CPNE, which was not an objective test in the first instance.  Like other Plaintiffs, Excelsior did not initially inform Ms. Wilson that she needed a workshop to have a chance at passing the exam.  During the test, EC Examiners were looking for any minor infraction to fail the Plaintiff.  Defendant failed Plaintiff Wilson in October of 2013 for invalid reasons.

22.  Plaintiff Helen Sposato is a resident of the State Arkansas.  She was an LPN for 34 years prior to enrolling with the Defendant.  The Defendant withheld from Plaintiff material information regarding the CPNE, including the fact that it is a subjective exam that includes areas of testing that do not relate to the knowledge of an experienced nurse.  The Defendant actively represented to Plaintiff that the test is objective, but the test was not objective in any manner.  The Examiners tended to make up requirements, and they ignored matters that are known to be part of a nurse's standard of care, such as walking a patient who requires assistance back to his room and simply washing hands.  The Defendant failed this nurse with 34 years of experience twice: once is a Texas site, which is now closed and once in Georgia in April of 2011.

23.  Plaintiff Kacy McDonough who is a resident of the State of South Carolina held her Bachelor's degree in Information Technology at the time she applied for enrollment with the Defendant in or around April of 2011.  The Plaintiff incorporates by reference the facts concerning the representations and omissions of the Defendant, and further adds that Defendant's CPNE was completely subjective as

9

evidenced by the fact that the difference between taking the test in Georgia in November of 2013 and in Queens, New York in January of 2014 was one of "night and day."  After the Defendant unfairly failed the Plaintiff in Georgia, she utilized Defendant's subjective test-appeal process and was passed without receiving the education promised, or the confidence that the exam tested Plaintiff's true abilities in any respect.

24. Plaintiff Sherry Taitz who is a resident of the State of Florida was an LPN at the time she enrolled with Excelsior in March of 2007.  She had acute care experience at the time she took Defendant's exam.  In fact, EC held itself out to be a school that can transition students from "LPN to RN."  Notwithstanding Plaintiff's knowledge and experience, the Defendant wrongfully failed Ms. Taitz twice: once in September of 2010 and another time in January of 2011.  One of Defendant's exam Administrators indicated to Plaintiff that some students are passed in error - as a result of the subjective exam - and that the passing is not reversed.  The Plaintiff took these tests in Queens, New York.  The Defendant simply failed to fairly administer the test, as is the case with so many other Plaintiffs and consumers.

25. Marla Huber is a resident of the State of Florida who holds a Bachelor's Degree in Psychology.  Having been in the medical field for 17 years, Plaintiff enrolled in Defendant's program, in or around January of 2006, so that she could earn an RN degree.  It was only in February of 2012, that Excelsior released information to Plaintiff regarding the CPNE.  Defendant failed the Plaintiff three times: in August of 2012, in November of 2012, and in June of 2013.  She took the tests in New York, Georgia and then New York respectively.  This Plaintiff observed

EC's Examiner and Administrator disagree on whether the Plaintiff should have passed one test. On another occasion, the Plaintiff observed an Examiner employed by the Defendant failing to pay attention, which is in further breach of Defendant's obligations to Plaintiff.

26. Plaintiff Joy Marie Czapski is a resident of Columbia, Maryland who holds a Bachelor's degree in Management. Plaintiff has been an LPN since 2006. She enrolled in Defendant's program in or around July of 2009 at which time the Defendant represented to Plaintiff that it administered the CPNE test fairly and objectively. The Defendant failed to disclose to this Plaintiff, among other things, the pass/fail rate, the non-transferability of EC credits, the nature of the testing sites, the fact that the sites varied by staff knowledge, and the type and quality of equipment. The testing procedures varied from site to site. Defendant failed Plaintiff first at a Pennsylvania site in July of 2012, and a second time at the same site in November of 2012. When Plaintiff took the test for the third time in New York, in October of 2013, she observed the difference between the sites and the further lack of objectivity. As is common with the Defendant, EC passed the Plaintiff on a care plan scenario during the CPNE exam, and it later failed her in a similar scenario on a subsequent exam.

27. Plaintiff Daniel Quick who is a resident of Las Vegas, Nevada, registered with the Defendant in or around 2009. The Defendant failed to disclose to Plaintiff a number of material pieces of information, including the pass/fail rate, the graduation rates, the total and complete subjective nature of the CPNE test, and the fact that credits from Excelsior would not be transferrable. Had the disclosures -

11

regarding the lack of provision of education or clinical instruction, the lack of objectivity, the pass/fail rate, the lack of transferability of the program credits to other RN programs, among others - been made to this Plaintiff, he would not have registered with the Defendant.

28. Plaintiff Charity Richert is an Ohio resident who was an LPN at the time she enrolled with the Defendant in or around 2010. The Plaintiff enrolled with the Defendant because Excelsior represented that it had a site near where she lived in Ohio. After registering, Plaintiff learned that the Ohio site, forming the primary reason for her registering with Excelsior, closed. She would not have registered with the Defendant had disclosures been made about the RN degree and the CPNE, which include the impending closing of the Ohio site, the failure to inform Plaintiff that the test was in fact subjective (contrary to EC's false representations), the pass/fail rate, the lack of provision of education or clinical instruction, the fraudulent nature of the program, among other things. The Defendant failed the Plaintiff twice at EC's Pennsylvania site: once in March and once in November 2013. The Plaintiff was not allotted the time to show her knowledge, assuming that the test was bona fide, and Plaintiff was tested by the Defendant on equipment that Defendant's Examiner knew did not operate, and did so with the fraudulent intent that Plaintiff fail.

29. Plaintiff Diane Rubens is a Louisiana Resident who enrolled with the Defendant on or about October 2010. This Plaintiff was an LPN at the time she applied to EC's program, and Defendant falsely advertised that its CPNE was objective. Excelsior failed to inform the Plaintiff of a number of material facts, which

would have made a difference in Plaintiff's decision to enroll. These omissions include that EC provides no clinical instruction and that a clinical education was necessary for passing the CPNE. As is the case with all of the Plaintiffs in this action, EC kept all material information regarding the CPNE a mystery, including the pass/fail rates, and that the credits earned at Excelsior would become useless, if a Plaintiff failed at EC and wished to transfer into another RN program. The Defendant failed Plaintiff on its CPNE on two different occasions in April and in July of 2013.

30. Plaintiff Karen Blanken is an Ohio State resident who enrolled with the Defendant in or around 2008. The Plaintiff has a Master's Degree in Business Administration and was a paramedic at the time she enrolled in EC's program. As was the case with the other Plaintiffs, the Defendant failed to disclose material information to Plaintiff concerning its program, including the lack of clinical instruction, the unfair and subjective nature of the test, the pass/fail rate, or the actual pass/fail rate, the true cost of the "education," the fact that Plaintiff could not transfer her EC credits to another nursing program, among other omissions of fact. When Plaintiff discovered the total lack of clinical instruction, she requested the Defendant to assist her in receiving clinical exposure from her employer. The Defendant declined to cooperate with Plaintiff's employer. The Plaintiff took the first CPNE in August of 2011, and took the second test in October of 2012. The Defendant failed the Plaintiff on both occasions. The Defendant has never disclosed to the Plaintiff any graduation rate, and it never subsequently disclosed to Plaintiff a graduation rate even when she specifically requested it. This Plaintiff would not

13

have enrolled into Defendant's program had she learned that Excelsior does not disclose its graduation rate.

31. Plaintiff Wanda Pennino who is a resident of the State of Florida, enrolled with the Defendant in or around June of 2009, based on Defendant's representations that it provided consumers with an educational program in nursing. The only education provided by the Defendant to this Plaintiff was a conference in September of 2013, in Orlando, which did not constitute an adequate clinical education. Ms. Pennino had invested time and had expended significant funds in taking Defendant's mini courses. When she took Defendant's CPNE in Georgia in November of 2013, Plaintiff discovered how subjective the exam is and learned that the appeal process is designed to merely pacify consumers and engage them so that they believe that the failure was their fault while permitting Excelsior to raise defenses to its subjective testing practices. Excelsior picks and chooses which appeals to grant in a process that is inherently arbitrary. Many students chose not to utilize EC's appeals process in the first instance.

32. Plaintiff Jillian Phelan is a resident of the State of Michigan who enrolled in Plaintiff's RN program in May of 2009. The Defendant represented and advertised that it offered "a rigorous nursing curriculum [that] is tailored to the learning needs of adult students" and EC represented to this Plaintiff that she would receive a clinical education, and these representations were false. In fact, the Plaintiff requested assistance from the Defendant and had to wait for as long as two months to receive "conferences" that Defendant had promised her. The actual exam was so subjective that the results of the test do not often reflect the knowledge of

the consumer taking the exam. The Plaintiff was permitted to pass solely because of the Examiner's discretion, and Defendant's Examiner assisted her on six (6) different occasions during her examination.  In fact, one of Plaintiff's Examiners informed Plaintiff that she felt that the program was "unfair" and that some of the Examiners attempt to help the students pass.  This Plaintiff and Plaintiff Rubens observed the Defendant administer the test in a racially biased fashion.  This is because the subjectivity allows the Examiners a great deal of discretion.

33.   Plaintiff Deborah McCarver is a resident of the State of Tennessee who enrolled with the Defendant in October of 2009.  Like the other Plaintiffs, the Plaintiff was led to believe that she would receive instruction and guidance for the significant monies she was paying the Defendant.  Plaintiff discovered, after she enrolled in the program of the Defendant, that to receive any guidance, or to have any questions answered, she was required to pay for an "online conference" in order to speak with an instructor.  Excelsior charged this Plaintiff for online practice quizzes.  The Plaintiff noted several discrepancies between Defendant's required textbooks and the materials provider by Excelsior.  As was the case with other Plaintiffs, the Defendant failed to respond to contacts made by the Plaintiff, and instead referred the Plaintiff to required or recommended readings.  The Plaintiff discovered Defendant's deceptive practices before taking the CPNE, but not before she had already expended thousands of dollars on an application fee, registration and annual fees, mini courses, books, expenses, among other losses.   The Plaintiff has learned that the credits earned from Excelsior are not transferrable to a bona fide associate degree in nursing program.

34. Plaintiff Debra Alexander is a resident of the State of Kentucky. She holds an Associate's degree in Healthcare Information Systems Management. She enrolled with the defendant in or around September of 2009. As was the case with the other Plaintiffs, the Defendant withheld all material information regarding the CPNE from this Plaintiff, including information regarding the subjectivity of the test, any actual pass/fail rate, any graduation rate, the actual cost of the program to include the cost of retaking the subjective test. The Defendant failed to disclose its involvement with the CPNE, its interest in students' failure, and the lack of third-party oversight. The Defendant failed this Plaintiff in Georgia, in July of 2011 and in October of 2012.

35. Upon information and belief, as this lawsuit is being filed, the Defendant has now begun to call its subjective test: "a high stakes" exam, which is more information than Defendant had ever disclosed to the Plaintiffs. EC now promises that it will provide future consumers with a "virtual course." Even if Defendant's acknowledgement of the wrongs will be effective, these steps come much too late and after hundreds of consumers, including the named Plaintiffs were victimized.

36. This action is maintainable as a class action. The Plaintiffs believe that the class they propose to represent is so numerous that joinder of all members is impracticable. Although the Plaintiffs have not been provided with the records from the Defendant, hundreds, if not thousands, of students are/were impacted by Defendant's actions. There are questions of law and fact common to the class, and the claims of the named Plaintiffs are typical of the claims of the class. The Plaintiffs will fairly and adequately protect the interests of the class.

16

## COUNT ONE
## NYGBL §349 and §350, *ET SEQ.*
## Deceptive Or Misleading Practices

37. The Plaintiffs reallege the allegations made above and in this Complaint and incorporate the same by reference as if fully set forth herein, and further state:

38. For that the Defendant Excelsior engaged in conduct that was consumer oriented and did so in a manner, which was materially deceptive and misleading to consumers and this conduct caused Plaintiffs harm. Specifically, the Defendant made representations and omissions regarding its program, which was not educational, and regarding its CPNE test, which is neither objective nor fair.

39. The Defendant materially misled the Plaintiffs in the manner discussed above, including by failing to disclose information regarding the pass/fail rates, or the accurate pass/fail rate, any graduation rate, the nature of the exam as fully discussed above, the lack of education, and the lack of transferability of credit to other institutions.

40. As a result of the representations and omissions, Plaintiffs suffered significant losses, including funds expended in registration and annual fees, course fees, testing frees, funds expended in relation to the deceptive program, and lost wages.

## COUNT TWO
## Breach of Contract

41. The Plaintiffs reallege the allegations made above and in this Complaint and incorporate the same by reference as if fully set forth herein, and further state:

17

42. The Defendant was under a contractual obligation to provide the Plaintiffs with material information concerning the test, including but not limited to the subjective nature of the test, the pass/fail rate, the non-transferability of the EC credits, and the Defendant failed in its obligation to provide Plaintiffs with this information.

43. The Defendant also failed to administer the test "fairly and objectively." None of the Plaintiffs were adjudged fairly and based upon her/his knowledge. Instead, the Defendant deviated from its "manual" and its representatives looked for areas to fail the Plaintiffs so as to cause them to retake the examination, paying Excelsior an additional time each time that they took the said test.

44. The Defendant Excelsior represents to consumer and represented to the Plaintiffs that it provides an educational program. The Defendant breached that promise when it utterly failed to provide an education to Plaintiffs other than a written manual and a test.

45. The Defendant revealed to Plaintiffs that they make take an "optional" workshop, but the Plaintiffs learned that they were required to pay a fee separate from their program fee for the said workshop.

46. Each of the Plaintiffs alleges that the Defendant administered the test - consistent with Excelsior's conflict of pecuniary interest in the students' failures - in an unfair and subjective manner so that each and every Plaintiff "failed" for reasons other than their knowledge and abilities. Plaintiffs will testify under oath, in the trial of the above-captioned matter, that they were failed for a reason/reasons that were unjust, unfair, subjective and, at times, concocted, and this provides an

additional and separate basis for Defendant's breach of contract. By way of example, some of the Plaintiffs have worked in the nursing field for decades, and they were failed for completely invalid reasons and, in some instances, not based on direct observation.

47. As a result of the representations and omissions, Plaintiffs suffered significant losses, including funds expended in registration and annual fees, course fees, testing frees, funds expended in relation to the deceptive program, and lost wages.

### **Prayers for Relief As to Both Counts**

WHEREFORE, your Plaintiffs respectfully pray that this Honorable Court:

a. Order that the Defendant discontinue its violations of New York General Business Law §349, *et seq.* FORTHWITH;
b. Require that Defendant remove from its websites and public advertisements any and all statements that the CPNE is an objective exam;
c. Require Defendant to clarify publicly, in statements and advertisements, that its RN nursing education is merely an exercise in exam-taking;
d. Require the Defendant to disclose its pass/failure rate for each of its sites and for the entire RN program;
e. Require the Defendant to inform consumers that credits earned in its subject nursing program are not transferrable;
f. Order that the Defendant reimburse Plaintiffs for any and all application fees, registration fees paid, including but not limited to: enrollment fees, annual registration fees, mini-course fees (the term fees herein also includes all "tuitions"), for any workshops taken by Plaintiffs, and for any uniforms and equipment Plaintiffs purchased;
g. Order that Defendant reimburse Plaintiffs for all of the CPNE fees and costs, including all travel and lodging expenses and all amounts paid to all workshops taken to prepare for the CPNE;
h. Order that Defendant pay Plaintiffs for all of their lost wages;
i. Require the Defendant to pay statutory fines, costs of suit, and attorneys' fees;
j. Grant the Plaintiffs, and the class they represent, a judgment in the amount of Ten Million Dollars ($10,000,000.00); and
k. Grant your Plaintiffs any such other and further relief as to this Court may appear just and proper.

**JURY TRIAL DEMAND**

The Plaintiffs respectfully request a jury trial on all of the factual and legal issues that may be tried by a jury in the above-captioned action.

                              Respectfully Submitted,

                              THE PLAINTIFFS,

                              **HERMINA LAW GROUP**

BY:    **_/s/ John Hermina_**
           Their Counsel
           John Hermina, Esq. (JH7479)
           HERMINA LAW GROUP
           Laurel Lakes Executive Park
           8327 Cherry Lane
           Laurel, Maryland 20707
           John@herminalaw.com
           Tel 301-776-2003
           Fax 301-490-7913