**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
----------------------------------------------------------------x
**CAROLINE CASTELLAW, et al.,**

                        **Plaintiffs,**           **REPORT AND**
                                             **RECOMMENDATION**

                -against-                   **14-CV-1048 (PKC)**

**EXCELSIOR COLLEGE,**

                        **Defendant.**
----------------------------------------------------------------x

**ROANNE L. MANN, UNITED STATES MAGISTRATE JUDGE:**

More than seven years ago, a series of plaintiffs brought this class action, on behalf of themselves and all others similarly situated, seeking damages and injunctive relief arising out of plaintiffs' enrollment in the Associate Degree in Nursing Program (the "Nursing Program") of defendant Excelsior College ("defendant" or "Excelsior"). See Third Amended Complaint (Oct. 31, 2014) ("TAC"), Electronic Case Filing Docket Entry ("DE") #82. The action was settled on a class-wide basis in 2015, with the Court's approval. In 2018, plaintiffs moved to set aside the settlement due to an alleged breach of the agreement, but the parties subsequently achieved an out-of-court resolution of that dispute. Currently before the Court, on referrals from the Honorable Pamela K. Chen, are *pro se* submissions filed by named plaintiff Maketa Jolly ("Ms. Jolly") to reopen the case or set aside the judgment. See Order Referring Motion (May 21, 2021); Order Referring Motion (May 5, 2021); Order Referring Motion (Apr. 28, 2021).

**FACTUAL AND PROCEDURAL BACKGROUND**

**I.**    **Original Class Action**

The gravamen of the underlying class action was that defendant withheld material

information regarding the Nursing Program and made misrepresentations as to the nature and quality of the Nursing Program. Specifically, plaintiffs alleged that defendant failed to inform them of graduation rates from the Nursing Program and failed to inform them of accurate pass rates for the Clinical Performance in Nursing Examination (the "CPNE"), for which each plaintiff paid in excess of $2,000 each time he or she took the exam. See TAC ¶¶ 14, 16, 18-20. Plaintiffs further alleged that delays in completing the Nursing Program caused them to incur additional annual fees and that defendant misled them as to the costs required for retaking the CPNE. See id. ¶¶ 106-110, 112. In addition, plaintiffs claimed that defendant failed to inform them of the Nursing Program's deficiencies and the potential lack of transferability of credits earned in the Nursing Program. See id. ¶¶ 17, 22, 105-06.

Following a conference held on January 21, 2015, the parties agreed to settle plaintiffs' claims based on the terms of this Court's settlement recommendation. See Minute Entry (Jan. 21, 2015), DE #141; Minute Entry (Jan. 30, 2015), DE #145. The resulting settlement agreement provided that plaintiffs would participate in the modification of defendant's disclosures at issue in the litigation, that each named plaintiff would receive an incentive award of $2,500 for participating in the prosecution of plaintiffs' claims, and that the named plaintiffs and putative class members would receive $200 for each time they had failed the CPNE. See Stipulation of Settlement (Feb. 20, 2015) ("Settlement Agreement"), DE #151-1. The parties' written agreement defined the settlement class as all current or former students of defendant's Associate in Science and Associate in Applied Science in Nursing Degree Programs, who took the CPNE at any time, who failed the exam, who paid for and took the CPNE again during the

class period, and who failed the CPNE at least one other time during the class period.  See id. ¶ VII(A).  On July 17, 2015, the Honorable Jack B. Weinstein (the District Judge to whom the case was then assigned) granted the parties' motion for final approval of the settlement, and judgment was entered on July 31, 2015.  See Final Approval Order (July 17, 2015), DE #166; Clerk's Judgment (July 31, 2015) (the "2015 Judgment"), DE #173.

## II.     Previous Post-Judgment Motions

On November 13, 2018, plaintiffs moved to set aside the settlement based on defendant's purported breach of the Settlement Agreement by continuing to provide inaccurate information to students regarding the passage rates for the CPNE.  See Motion to Set Aside Settlement and for Legal and Equitable Relief (Nov. 13, 2018), DE #178.  After the parties conducted some discovery, they agreed to resolve their dispute and, by letter dated March 11, 2019, plaintiffs withdrew their motion to set aside the class settlement.  See Motion to Withdraw (Mar. 11, 2019), DE #201.

In a letter dated March 11, 2019, Ms. Jolly, proceeding *pro se*, requested that Judge Weinstein assist her in connection with the impending suspension of her nursing license by the Board of Nursing of the State of New Jersey.  See Letter Motion for Injunction (received Mar. 14, 2019), DE #203.  In that letter, Ms. Jolly blamed defendant for denying to the New Jersey licensing board that Ms. Jolly had graduated from the Nursing Program, purportedly in retaliation for her participation in this action.  See id. at 2-3.  Yet, Ms. Jolly also claimed that she "never passed [herself] off 'EVER' as an Excelsior graduate."  Id. at 2.

After this Court requested that class counsel, John Hermina, Esq., confer with Ms.

3

Jolly, Mr. Hermina submitted a letter from Ms. Jolly, which confirmed her intention to withdraw her request for assistance. See Letter (Apr. 3, 2019) at 1, DE #206; see also id. at 2 (letter attachment from Maketa Jolly). Indeed, on March 26, 2019, Ms. Jolly executed a general release of her claims against Excelsior College, in connection with the resolution of the motion by the class to set aside the settlement. See Letter in Response to Plaintiff Maketa Jolly's *pro se* submissions (Apr. 19, 2019) at 3-4, DE #210; Ex. D to Declaration of Laura B. Juffa (Apr. 19, 2019), DE #210-1.

Shortly thereafter, by letter dated April 8, 2019, Ms. Jolly sought to "retract" the withdrawal of her motion. See Letter dated 4/8/19 from Maketa S. Jolly to USMJ Mann (Apr. 10, 2019), DE #208. In response, defendant explained that Ms. Jolly had enrolled in the Nursing Program in 2011 and was dismissed from the program in 2014 after failing to pass the Focused Clinical Competencies Assessment, a prerequisite for taking the CPNE, the exam that was a focus of the original lawsuit. See Letter in response to Plaintiff Maketa Jolly's *pro se* submissions (Apr. 19, 2019) ("4/19/19 Resp."), DE #210. As a result, Ms. Jolly did not graduate from defendant's Nursing Program. According to defendant, "Ms. Jolly has engaged in a troubling pattern of misrepresentation regarding her educational background in order to obtain a license as a Registered Nurse ('RN') in several states." Id. at 1. As a result, Excelsior has been called upon to confirm to several state licensure agencies that Ms. Jolly did not graduate from the Nursing Program. See id. at 3; see also Notice filed by Maketa S. Jolly enclosing attachments for the courts' review (May 13, 2021) ("5/13/21 Notice") at ECF p. 15, DE #227 (Letter from Mary Lee Pollard to Missouri State Board of Nursing regarding Ms.

4

Jolly "misrepresent[ing] herself as a graduate of Excelsior College").  Moreover, Excelsior has requested that Ms. Jolly cease and desist from falsely representing herself as a graduate of the Nursing Program.  See 4/19/19 Resp.; see also 5/13/21 Notice at ECF p.14 (cease and desist letter).

In a later submission dated June 7, 2019, styled as "Motion for Summary Judgment Permanent Injunction," Ms. Jolly alleged that defendant, its Dean of Nursing, Mary Lee Pollard, counsel for defendant, and various state boards of nursing conspired to deny her state licensure in Vermont, Pennsylvania and Missouri, and to have her New Jersey license suspended.  See Letter dated 6/7/2019 from Maketa Jolly to the Honorable Judge Roxanne [sic] Mann (June 13, 2019), DE #213; see also Letter to Court dated August 5, 2019 from Maketa S. Jolly (docketed Sept. 26, 2019) ("8/5/19 Ltr.") at ECF pp. 1-2, DE #218 (accusing Ms. Pollard of defaming Ms. Jolly to multiple state boards of nursing and of violating section 10 of the Settlement Agreement).  Ms. Jolly further advised that she had commenced an action in the Eastern District of Pennsylvania against Phyllis Mitchell of the State of Vermont Board of Nursing, Joanne Leone of the State of New Jersey Board of Nursing, and Ms. Pollard, based largely on the same facts.  See 8/5/19 Ltr. at 2.

Having considered Ms. Jolly's 2019 *pro se* submissions, this Court found that her allegations concerned conduct "occurring at least two years after the parties' class action settlement was approved by the Court and the case was closed."  Report and Recommendation (Sept. 26, 2019) ("2019 R&R") at 9, DE #219.  In fact, Ms. Jolly "assert[ed] an entirely new theory of liability and [sought] a different kind of relief from that litigated by the parties and

5

addressed by the 2015 Settlement Agreement." Id. at 10. Accordingly, this Court recommended that the District Court deny the relief requested by Ms. Jolly for lack of jurisdiction over her new claims. See id. at 11. Ms. Jolly's objections to this Court's Report and Recommendation, see Objection (Oct. 22, 2019), DE #220, were overruled by Judge Weinstein, see Order Accepting Report and Recommendation (Oct. 22, 2019), DE #221.

Meanwhile, Ms. Jolly commenced three separate federal actions since the 2015 class action settlement, all of which included allegations similar to those raised here, and which are further described below: Jolly v. State of Vermont Board of Nursing, 19-cv-2208, filed on May 21, 2019 in the Eastern District of Pennsylvania (the "Pennsylvania case"); Jolly v. New Jersey Board of Nursing, 19-cv-13889, filed on July 17, 2019 in the District of New Jersey (the "New Jersey case"); and most recently, Jolly v. Excelsior College, 21-cv-2930, which was filed in this District on May 13, 2021, and transferred to the Northern District of New York on May 27, 2021 (the "2021 case").

**III.   The Pennsylvania Case**

In the Pennsylvania case, Ms. Jolly brought claims against the State of Vermont Board of Nursing and its official, Ms. Mitchell; the Board of Nursing and Ms. Leone; and Excelsior College and Ms. Pollard. See Memorandum and/or Opinion (May 24, 2019) at 1-2 & n.1, DE #4 in Jolly v. State of Vermont Bd. of Nursing, 19-cv-2208 (E.D. Pa.). On May 24, 2019, the District Court dismissed the claims brought against Vermont and New Jersey, as well as the official capacity claims against Vermont and New Jersey officials, on the ground of Eleventh Amendment immunity. See id. at 5-6. The District Court in Pennsylvania

6

transferred venue of the remaining claims to the Northern District of New York (the "NDNY"). See id. at 6-8.

The transferred claims were read by the transferee District Court to assert seven causes of action: (1) disclosure of personal information; (2) violation of 18 U.S.C. § 242; (3) conspiracy under 42 U.S.C. § 1985; (4) discrimination under 42 U.S.C. § 2000e ("Title VII"); (5) Excelsior's violation of attorney-client privilege; (6) another Title VII claim; and (7) a defamation claim. See Jolly v. Excelsior College, 1:19-CV-1317, 2020 WL 3128535, at *3 (N.D.N.Y. June 12, 2020), reconsideration denied, 2020 WL 3606374 (N.D.N.Y. July 2, 2020). On June 12, 2020, the District Court in the NDNY granted Excelsior's motion to dismiss the complaint, with prejudice, under Rule 12(b)(6) of the Federal Rules of Civil Procedure (the "FRCP"), for failure to state a claim. See id. at *7. Ms. Jolly's motion for reconsideration or to amend the judgment was also denied. See 2020 WL 3606374, at *3. Ms. Jolly appealed to the Second Circuit, which rejected the appeal for "lack[ing] an arguable basis either in law or fact." DE #163 in Jolly v. Excelsior College, No. 20-2162 (2d Cir. Mar. 11, 2021).[1]

## IV.   The New Jersey Case

In the New Jersey case, Ms. Jolly brought claims against the state's Board of Nursing and Ms. Leone, again alleging that Excelsior, Pollard and Leone conspired to remove Ms. Jolly's New Jersey nursing license. On September 13, 2019, the District Court dismissed that

---

[1] Ms. Jolly continued to file motions for reconsideration in the Second Circuit, for a stay and to recall the mandate, all of which were rejected. See Response to Motion (May 21, 2021) ("5/21/21 Resp.") at 3-4, DE #229; see also DE #175, #178, #187 in Jolly v. Excelsior College, No. 20-2162 (2d Cir.).

action for failure to pay the court's filing fee or submit a complete application to proceed *in forma pauperis*.  See Memorandum Opinion and Order, DE #7 in 19-cv-13889 (D.N.J. Sept. 13, 2019).

## V.     New Jersey Final Order of Discipline

On May 14, 2020, the State of New Jersey Board of Nursing issued a Final Order of Discipline regarding Ms. Jolly's LPN licensing.  See Final Order of Discipline, DE #229-1 (attached to 5/21/21 Resp. as Ex. A).  The Board of Nursing found that Ms. Jolly had received an RN license from New Jersey due to a clerical error, and that she then relied on that erroneous license to apply for an RN license in Pennsylvania.  The error was corrected on December 6, 2017, and Ms. Jolly's New Jersey RN license was declared null and void.  On July 31, 2018, the New Jersey Board of Nursing received information that Ms. Jolly had attempted to obtain a RN license in Vermont by representing to its Board of Nursing that she had graduated from Excelsior's Nursing Program in 2014, which, it is undisputed, she had not. Because Ms. Jolly failed to report the erroneous RN license and attempted to use it to her advantage, the New Jersey Board of Nursing suspended her state LPN license for five years and assessed a $5,000 civil penalty.  See id.

## VI.    The 2021 Case

On May 13, 2021, Ms. Jolly commenced a new action in this District against Excelsior College, Mary Lee Pollard, Joanne Leone, and Phyllis Mitchell, in which Ms. Jolly recycles similar allegations that Ms. Pollard disclosed false information to nursing licensing agencies pertaining to plaintiff's academic record.  See Complaint (May 13, 2021), DE #1 in Jolly v.

Excelsior College, 21-cv-2930 (E.D.N.Y.). That case was recently transferred to the Northern District of New York on the ground that the claims asserted concern events that are alleged to have occurred in Albany County, New York, do not involve any defendant residing in this District, and are similar to claims originally raised in the Pennsylvania case, which was transferred to the Northern District of New York. See Transfer Order (May 27, 2021), DE #2 in 21-cv-2930 (E.D.N.Y.).

## VII. The Instant Rule 60(b) Motions and Related Filings (DE #222, 224, 225, 227, 228, 230, 231)[2]

The instant motions pursuant to Rule 60(b) of the FRCP renew meritless arguments, which this Court has already rejected and that are not viable under the Federal Rules of Civil Procedure.

### A. *Document 222*

In a submission filed on April 15, 2021, and styled "Plaintiff's Motion to Supplement His [sic] Motion to Alter or Amend the Judgment[] or, in the Alternative, For Relief From Final Judgment Pursuant to Fed. R Civ. Pro. 60(b)," Ms. Jolly seeks to set aside the class action settlement in this action. See Plaintiff's Motion to Supplement (Apr. 15, 2021) ("Pl. Mot. to Supp."), DE #222. Ms. Jolly alleges that Ms. Pollard, Ms. Leone, and counsel for defendant (Laura Juffa, Esq.) conspired against her by "remov[ing] the plaintiff[']s two nursing licenses without due process" and by misrepresenting information about Ms. Jolly to other nursing licensing boards in the United States. See id. at ECF pp. 2-4, 5; see also Notice

---

[2] Docket entries 225 and 227 are largely repetitive and are not discussed in detail herein.

filed by Plaintiff (May 3, 2021) ("5/3/21 Notice") at ECF p. 2, DE #225 ("[T]he State of New Jersey violated the United States and New Jersey Constitution[s] with the revocation of two nursing licenses without evidence or judicial proceedings."); 5/13/21 Notice at ECF p. 3 (alleging that Ms. Leone "has engaged in shadow representation with the defense to undermine the integrity of the federal courts judicial system").  More specifically, Ms. Jolly alleges that Excelsior defamed her by falsely advising various nursing boards that Ms. Jolly had not completed defendant's Nursing Program.  Ms. Jolly further claims that this conspiracy to deprive her of her nursing license was undertaken because of her race.  See, e.g., Pl. Mot. to Supp. at ECF pp. 9, 10, 13, 14; see also 5/3/21 Notice at ECF pp. 1, 2; Reply to Defendant Excelsior College (June 9, 2021) ("6/9/21 Reply") at ECF pp. 1, 10-12, DE #230.  Ms. Jolly explains that she has discovered "new evidence" that was unavailable in 2019, when her prior motion to reopen was denied.³  See Pl. Mot. to Supp. at ECF pp. 5-6.  The "new evidence" upon which Ms. Jolly relies appears to be "society's evolving standards of decency with respect to the use of prolonged and indefinite misrepresented bias messaging . . . after the court issued its Report and Recommendation."  See id. at ECF p. 13.

According to Ms. Jolly, the revocation of her New Jersey nursing license constituted cruel and unusual punishment, in violation of the Eighth Amendment to the United States Constitution.  See id. at ECF p. 7.  Citing a penal statute, 18 U.S.C. § 2232, which criminalizes the destruction or removal of property to prevent its seizure, Ms. Jolly further

---

³ Ms. Jolly complains that class counsel failed to raise these issues with the Court prior to the withdrawal of the motion on behalf of the class to enforce the settlement.  See Pl. Mot. to Supp. at ECF p. 4.

10

alleges that the State of New Jersey deprived her of her nursing license without due process. See id. at ECF pp. 8-9. Finally, without further explanation, Ms. Jolly asserts that Ms. Leone is responsible for the entry of Ms. Jolly's name into a federal database for Medicaid Fraud.[4] See id. at ECF p. 10.

    B.    *Document #224*

In a document styled "Motion for Reopening Due to Federal Damages Violations of Bivens, Fraud on the Court," Ms. Jolly repeats her claims that New Jersey officials engaged in some form of misconduct that resulted in the revocation of her nursing licenses "without evidence or court proceedings," Motion to Reopen Case (Apr. 26, 2021) ¶ 33, DE #224, and that New Jersey officials entered Ms. Jolly's name into a Medicaid Fraud database, id. ¶ 34. Plaintiff seeks: (1) "[a]n opportunity to be heard and discuss with court members the impacts of hate, how it works and the depravity it causes and has caused my family and personal wealth for more than three years"; (2) an injunction against the state of New Jersey "for assisting in the federal matter"; (3) an order directing New Jersey to return Ms. Jolly's registered and practical nurse licenses; (4) "restor[ation of Ms. Jolly's] federal Medicaid participation privileges"; and (5) punitive and actual damages. Id. ¶ 36 (section titled "Order"). Notably, Ms. Jolly requests no relief against the only defendant named in the instant action. Id.

---

[4] In a further submission styled "Complaint of Perjury," which appears to be a complaint against defense counsel that was copied to various courts in New York and Pennsylvania, Ms. Jolly attaches a letter (Ex. H) from the State of New Jersey, advising that Ms. Jolly would be "debar[red] as a Provider from the NJ Medicaid program" based "upon the suspension of [her] license to practice nursing in the State of New Jersey by the New Jersey Board of Nursing[.]" Complaint of Perjury (June 21, 2021) at ECF pp. 56-57, DE #231-1.

C.  *Document #228*

In a filing titled "Motion to Set Aside/Re-open New Evidence," Ms. Jolly complains that in responding to her previous filings, defendant disclosed her protected educational information in violation of her privacy rights.  See Motion to Set Aside (May 17, 2021) ("5/27/21 Motion") at ECF p. 3, DE #228 ("it was not the province of the defense to disclose academic data in any public format . . . ."); id. at ECF p. 4 (defendant "had no right to disseminate [her] private academic data" in this case); see also 6/9/21 Reply at ECF pp. 1-2, 9.  She further states that defendant and the State of New Jersey Board of Nursing "falsified data against" her.  See 5/17/21 Motion at ECF pp. 5, 7-8; see also 6/9/21 Reply at 13.  Ms. Jolly seeks the return of her "Registered Nurse License," actual and punitive damages, and removal of certain information from "'Medicaid Fraud' repositories."  5/17/21 Motion at ECF p. 8.

In response to these repeated filings, defendant requests that the Court either sanction Ms. Jolly or warn her that her continued filing of "untenable submissions" constitutes "sanctionable conduct."  5/21/21 Resp. at 2, 7.

## DISCUSSION

### I.  Ms. Jolly's Motions to Reopen the Case or Vacate the Judgment

Courts construe *pro se* litigants' pleadings and briefs "liberally[,] . . . reading such submissions to raise the strongest arguments they suggest."  McLeod v. Jewish Guild for the Blind, 864 F.3d 154, 156 (2d Cir. 2017) (*per curiam*) (internal quotation marks omitted).  Accordingly, the Court treats plaintiff's various submissions referencing amending or

12

reopening the Judgment as motions for relief from a final order or judgment, and construes her submissions to raise the strongest arguments. Nonetheless, plaintiff's motions are meritless.

Rule 60(b) of the FRCP provides that a court may relieve a party from a final judgment or order for certain reasons, including "newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b)."[5] Fed. R. Civ. P. 60(b)(2).[6] "Since [Rule] 60(b) allows extraordinary judicial relief, it is invoked only upon a showing of exceptional circumstances." Nemaizer v. Baker, 793 F.2d 58, 61 (2d Cir. 1986); see Marrero Pichardo v. Ashcroft, 374 F.3d 46, 55 (2d Cir. 2004). The burden of proof in this regard is on the party seeking relief from judgment. See United States v. Int'l Bhd. of Teamsters, 247 F.3d 370, 391 (2d Cir. 2001). Here, Ms. Jolly's claims of new evidence are conclusory and meritless.

"'Judgment' as used in the [Federal] [R]ules includes a decree and any order from which an appeal lies." Fed. R. Civ. P. 54(a). Here, the only Judgment or Order that could properly be the subject of Ms. Jolly's motions is the 2015 Judgment, which was entered following approval of the class action settlement. In contrast, the 2018 dispute over the alleged breach of the Settlement Agreement did not result in an appealable order of the court or entry of judgment.

---

[5] Rule 59 of the Federal Rules of Civil Procedure provides that a party may move "to alter or amend a judgment . . . no later than 28 days after the entry of the judgment." Fed. R. Civ. P. 59(e). Ms. Jolly's motions are untimely under this rule, having been filed years after the entry of judgment in 2015. See Roistacher v. Bondi, 624 F.App'x 20, 22 (2d Cir. 2015). An untimely motion for reconsideration that seeks to modify or set aside a judgment is treated as a Rule 60(b) motion. See Lora v. O'Heaney, 602 F.3d 106, 111 (2d Cir. 2010).

[6] Ms. Jolly has failed to allege facts demonstrating the applicability of any of the grounds listed in the other clauses of Rule 60(b).

A Rule 60(b)(2) motion based on new evidence must be made "within a reasonable time—and . . . no more than a year after the entry of the judgment or order or the date of the proceeding." Fed. R. Civ. P. 60(c)(1). "The one-year limitation period for Rule 60(b) motions is 'absolute.'" Brown v. Combs, 241 F.App'x 761, 762 (2d Cir. 2007) (quoting Warren v. Garvin, 219 F.3d 111, 114 (2d Cir. 2000)). Because Ms. Jolly filed her latest challenges more than five years after the Judgment was entered (and more than two years after the 2019 post-judgment settlement), her motions based on newly discovered evidence must be denied as untimely. See, e.g., Brown, 241 F.App'x at 762 (*Pro se* plaintiff's "motion to vacate the judgment on the basis of newly discovered evidence . . . was untimely as it was filed more than 18 months after the District Court entered judgment[.]"); Jeffreys v. United Techs. Corp., 69 F.App'x 28, 30 (2d Cir. 2003) (*pro se* Rule 60(b) motion filed three years after judgment was untimely); Warren, 219 F.3d at 114.

Aside from its untimeliness, plaintiff's motions are frivolous as a matter of fact and law. To prevail on a Rule 60(b)(2) motion, "[t]he movant must demonstrate that (1) the newly discovered evidence was of facts that existed at the time of trial or other dispositive proceeding, (2) the movant must have been justifiably ignorant of them despite due diligence, (3) the evidence must be admissible and of such importance that it probably would have changed the outcome, and (4) the evidence must not be merely cumulative or impeaching." Int'l Bhd. of Teamsters, 247 F.3d at 392. Evidence of events that occur after the entry of judgment cannot form the basis for Rule 60(b) relief: The "[n]ewly discovered evidence must be of 'facts that existed at the time of trial *or other dispositive proceeding*.'" Metzler Inv.

14

GmbH v. Chipotle Mexican Grill, Inc., 970 F.3d 133, 146 (2d Cir. 2020) (quoting Mirlis v. Greer, 952 F.3d 36, 50 (2d Cir. 2020)); NYC Med. Practice, P.C. v. Shokrian, No. 19-CV-162 (ARR) (RML), 2020 WL 1853203, at *3 (E.D.N.Y. Jan. 31, 2020) ("Newly *discovered* evidence must have existed at the time that the underlying motion was adjudicated[.]"). Here, all of the conduct that Ms. Jolly complains of regarding her New Jersey nursing license occurred after the Court entered Judgment in this case. See, e.g., TAL Props. of Pomona, LLC v. Village of Pomona, No. 17-CV-2928 (CS), 2019 WL 32879 83, at *6 n.4 (S.D.N.Y. July 22, 2019) ("These events are irrelevant. To the extent these events occurred after the motion to dismiss was granted, evidence of them 'is not newly discovered evidence that was in existence at the time of the order; it is simply new evidence.'") (quoting Kurzweil v. Philip Morris Cos., No. 94-CV-2373(MBM), 1997 WL 167043, at *5 (S.D.N.Y. Apr. 9, 1997)). In this Court's 2019 R&R, it observed that Ms. Jolly's allegations concerned, at the earliest, "conduct occurring . . . at least two years after the class action settlement was approved by the Court and the case was closed." 2019 R&R at 9. On that ground alone, Ms. Jolly's motions must fail.

In addition, as a factual matter, Ms. Jolly provided no evidence that would warrant relief irrespective of the deficiencies discussed above. Ms. Jolly's allegations that defendant and the Vermont and New Jersey Boards of Nursing conspired against her on account of her race are without any factual support. Ms. Jolly has not submitted any evidence that would raise an inference of racial animus. Regardless, the underlying class action did not involve allegations of racial discrimination. In fact, the one paragraph pertaining to Ms. Jolly

15

contained in the Third Amended Complaint alleges only misrepresentations about the transferability of academic credits earned at Excelsior. Finally, Ms. Jolly has not provided any evidence to impute to defendant the actions of the New Jersey and Vermont nursing licensing boards.

Regarding plaintiff's allegations of defamation, the New Jersey disciplinary decision demonstrates that Ms. Jolly was not qualified to be an RN and that her license had been granted in error.[7] Indeed, in none of her various submissions does Ms. Jolly claim that she actually graduated from defendant's program, nor does she deny that she is ineligible to become a registered nurse. See Jolly, 2020 WL 3128535, at *1-2; see also 2019 R&R at 3 & n.1. Moreover, the class action Settlement Agreement does not contain any provision that would restrict defendant's ability to communicate with third parties as to whether class members completed the Nursing Program. Ms. Jolly's latest challenges are only tangentially related to the allegations giving rise to the underlying lawsuit against Excelsior College.

In addition, the claims advanced by Ms. Jolly have no substantive basis in law. For example, the Eighth Amendment's prohibition on cruel and unusual punishment does not apply to the conduct alleged in this case. Similarly inapposite is 18 U.S.C. § 2232, a criminal statute titled "Destruction or removal of property to prevent seizure." And while Ms. Jolly also claims that the 2019 Settlement Agreement violates 49 C.F.R. § 386.22, see Motion to Set Aside at ECF p. 6, that section applies only to settlement agreements before the Federal Motor

---

[7] The Board of Nursing's findings also establish a nondiscriminatory explanation for the suspension of her nursing license.

16

Carrier Safety Administration.

Ms. Jolly further asserts that defendant's disclosure of details regarding her academic record violated the Family and Educational Rights and Privacy Act ("FERPA"), 20 U.S.C. § 1232g.  See Motion to Set Aside at ECF pp. 3, 4, 5, 7-8.  Even assuming that any improper disclosure had occurred, the Court is unaware of any statutory or regulatory basis for setting aside the Judgment on that basis.  "FERPA's nondisclosure provisions fail to confer enforceable rights" on individuals as an express or implied private right of action pursuant to FERPA, or under 42 U.S.C. § 1983.  See Gonzaga Univ. v. Doe, 536 U.S. 273, 287-90 (2002); Dutkiewicz v. Hyjek, 135 F.App'x 482, 483 (2d Cir. 2005).  Moreover, as a plaintiff in the underlying class action, Ms. Jolly put her academic record at issue, since the class was defined as students who failed the CPNE nursing examination at least twice.  In any event, defendant's disclosures regarding her academic record in response to her post-judgment filings do not constitute "new evidence" that would provide a basis upon which to set aside the Judgment in this case.

## II.     Defendant's Request for Sanctions or a Warning of Sanctions

In light of the repetitive filings by Ms. Jolly - in this and other courts - recycling the same rejected arguments, this Court recommends that the District Court impose a filing injunction, the violation of which will be punishable by monetary sanctions.  See 5/21/21 Resp. at 1-2.  "A district court may, in its discretion, impose sanctions against litigants who abuse the judicial process."  SBC 2010-1, LLC v. Morton, 552 F.App'x 9, 12 (2d Cir. 2013) (quoting Shafii v. British Airways, PLC, 83 F.3d 566, 571 (2d Cir. 1996)). "Pursuant to that

17

authority a district court may impose filing injunctions 'subjecting a vexatious litigant to a "leave of court" requirement with respect to future filings.'" Id. at 12 (quoting In re Martin-Trigona, 9 F.3d 226, 229 (2d Cir. 1993)). Courts consider the following factors in deciding whether to impose a filing injunction:

> (1) the litigant's history of litigation and in particular whether it entailed vexatious, harassing or duplicative lawsuits; (2) the litigant's motive in pursuing the litigation, e.g., does the litigant have an objective good faith expectation of prevailing?; (3) whether the litigant is represented by counsel; (4) whether the litigant has caused needless expense to other parties or has posed an unnecessary burden on the courts and their personnel; and (5) whether other sanctions would be adequate to protect the courts and other parties.

In re Neroni, 639 F.App'x 9, 11 (2d Cir. 2015) (quoting Iwachiw v. N.Y. State Dep't of Motor Vehicles, 396 F.3d 525, 528 (2d Cir. 2005)). In connection with Ms. Jolly's pending motions, this Court directed her "to cease filing supplemental submissions unless she first seeks and receives permission to do so." Order (May 7, 2021). Ms. Jolly has ignored that directive. See Motion to Set Aside; 6/9/21 Reply. Given her ongoing practice of filing frivolous and repetitive letters, motions and lawsuits, the District Court is urged to impose a filing injunction requiring that she seek and obtain advance leave of court, and to warn Ms. Jolly that violations will be punishable by monetary sanctions. See, e.g., Sabeniano v. Citibank, N.A., New York, 16-CV-1723 (AJN), 2020 WL 8514824, at *2-3 (S.D.N.Y. Aug. 14, 2020), reconsideration denied, 2020 WL 8514823 (S.D.N.Y. Nov. 19, 2020); Jericho Grp. Ltd. v. Mid-Town Dev. Ltd. P'ship, No. 14-CV-2329 (DLI)(VMS), 2015 WL 6680213, at *6-7 (E.D.N.Y. Nov. 2, 2015) (threatening sanctions and attorneys' costs where plaintiff filed multiple motions for reconsideration).

## **CONCLUSION**

For the foregoing reasons, this Court respectfully recommends that the District Court deny the motions filed by Maketa Jolly and impose a filing injunction.

Any objection to the recommendations contained herein must be filed with Judge Chen by July 9, 2021. Failure to file objections in a timely manner may waive a right to appeal the District Court order. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72; Caidor v. Onondaga Cty., 517 F.3d 601, 604 (2d Cir. 2008).

The Clerk is requested to send copies of this Report and Recommendation to Maketa Jolly at 42 Kingston Terrace, Aston, PA 19014 and P.O. Box 127, Media, PA 19063.

**SO ORDERED.**

**Dated:** **Brooklyn, New York**
**June 21, 2021**

/s/ *Roanne L. Mann*
**ROANNE L. MANN**
**UNITED STATES MAGISTRATE JUDGE**